**FOR PUBLICATION**
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------X

In Re:                                                              Chapter 7

ROBERT STONER,                                          Case No.: 11-10864 (MBK)


                                          Debtor.
--------------------------------------------------------X

APPEARANCES:

Thomas J. Orr, Esq.
Law Office of Thomas J. Orr, Esq.
321 High Street
Burlington, NJ 08016
Attorney for Trustee, Thomas Orr, Esq.

William H. Oliver, Jr., Esq.
Law Offices of William H. Oliver, Jr., Esq.
2240 Route 33 East, Suite 112
P.O. Box 667
Neptune, NJ 07753
Attorney for Debtor, Robert Stoner


**MICHAEL B. KAPLAN, U.S.B.J.**


### MEMORANDUM DECISION

### I.     INTRODUCTION

This matter is before the Court by way of a Motion Objecting to Exemptions ("Motion") filed on behalf of the Trustee, Thomas J. Orr ("Trustee").  Through the Motion, the Trustee seeks to prohibit the Debtor, Robert Stoner, ("Debtor") from claiming a homestead exemption under 11 U.S.C. § 522(d)(1) in real estate previously owned by his father.  The Debtor opposes the Trustee's Motion and contends that he is entitled to take the exemption because the real estate

passed directly to him at his father's death and because he is permitted to amend his bankruptcy petition and schedules at any time prior to the close of his case.  A hearing on the Motion was held on January 28, 2013.  For the reasons set forth below, the Trustee's Motion is GRANTED and the Debtor is not permitted to take a homestead exemption pursuant to 11 U.S.C. § 522(d)(1) against the Debtor's interest in the real estate.

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.  The following constitutes the Court's finding of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

## II.    FACTS/PROCEDURAL HISTORY

The Debtor's bankruptcy petition ("Petition") was prepared on November 4, 2010.  The Debtor signed the Petition on January 7, 2011 and it was filed with the Court on January 12, 2011.  The Debtor's father passed away on January 10, 2011.  Counsel for the Debtor certifies that the Petition was filed without knowledge that the Debtor's father had passed away previously.

On November 28, 2012, the Debtor filed Amended Schedules and claimed an exemption pursuant to 11 U.S.C. § 522(d)(1) for his deceased father's property located at 2609 Moore Avenue in Point Pleasant, New Jersey ("Property").  The Amended Schedules also changed the Debtor's residence from 2350 Massachusetts Avenue in Toms River, New Jersey to the Property. The Amended Schedules show that the Debtor was either a one-third or one-quarter contingent

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

beneficiary under his father's Last Will and Testament ("Will").  The Trustee has brought this Motion seeking to bar the Debtor from claiming a homestead exemption for the Property.

The Trustee argues that the Will did not distribute the Property to the Debtor or his siblings.  Rather, the Trustee asserts that the Will simply provided for the equal division of the estate among the decedent's surviving children.  Thus, the Trustee contends that the Debtor did not own the Property and that, at the time of the bankruptcy filing, the Debtor held, at most, a contingent expectation of a distribution from the probate estate.   Further, the Trustee points out that the Will names the Debtor as a fiduciary to distribute the property of the estate, and the Property, in fact, was sold at some point prior to filing the Amended Schedules.  The proceeds were then distributed according to the Will.  Therefore, the Trustee concludes that the Debtor never acquired an ownership interest in the Property which would entitle him to an exemption under 11 U.S.C. § 522(d)(1).

The Debtor contends that he had been living with his father in order to care for him for over a year prior to the date he filed the Petition.  The Debtor also asserts that the Property passed directly to him immediately upon his father's death.  The Debtor cites to *N.J.S.A.* 3B:1-3 and *Egner v. Egner*, 183 N.J. Super. 326, 328, *aff'd.* 185 N.J. Super. 821 (App. Div. 1982) in support of his position.  In response to the Trustee's argument that the Property passed to the fiduciary at the time of the decedent's death, the Debtor submits that as the executor, he held an interest in the Property on the date of the bankruptcy filing, entitling him to an exemption.

After a careful review of the submissions of the parties and extensive independent research, the Court determines that the Debtor's mere occupancy of the Property at the time of filing, even when coupled with his expectancy under the Will, does not entitle him to claim a homestead exemption.  For the reasons set forth below, the Trustee's Motion is GRANTED.

## III.    DISCUSSION

The question presently before the Court is whether, at the time the Petition was filed, the Debtor held an interest in the decedent's Property, such that the interest entitled him to a residential exemption under 11 U.S.C. § 522(d)(1).  As a preliminary matter, the Court notes that upon the filing of a bankruptcy petition, an estate is created comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1). Included in this estate is "any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date by bequest, devise, or inheritance." 11 U.S.C. § 541(a)(5)(A).

In order to identify the nature of the Debtor's property interest, this Court is obliged to apply the substantive law of New Jersey. As the United States Supreme Court stated in *Butner v. United States*, "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979).

### A.  Debtor's Interest

There is no question that upon filing his bankruptcy, the Debtor possessed an interest in the decedent's estate which is included as part of the Debtor's bankruptcy estate.  *N.J.S.A.* 3B:1-3 provides that,

> [u]pon the death of an individual, his real and personal property devolves to the persons to whom it is devised by his will or to those indicated as substitutes for them in cases involving lapse, renunciation, or other circumstances affecting the devolution of testate estates, or in the absence of testamentary disposition, to his heirs, or to those indicated as substitutes for them in cases

4

> involving renunciation or other circumstances affecting devolution
> of intestate estates, *subject to rights of creditors and to
> administration*.

N.J.S.A. 3B:1-3 (emphasis added). Whatever the nature of the Debtor's interest in his father's real property, which will be discussed below, the Debtor's status as devisee in the Will, combined with the timing of the decedent's death and the filing of the Petition, render the Debtor's interest in the decedent's estate part of his own bankruptcy estate. 11 U.S.C. § 541(a)(1). However, as the statute reflects, the interest remains subject to the rights of the probate creditors and administration.

### B.  Title to the Real Estate

The Trustee posits that title to the real estate did not pass to the Debtor; therefore, the Debtor never acquired an interest in the Property which he could exempt under 11 U.S.C. § 522(d)(1). In opposition, the Debtor cites to *Egner* and contends that the transfer of the title occurs immediately upon the death of the owner. *Egner,* 183 N.J. at 328. The specific language of the Will provides otherwise:

> Upon my death, title to any real property passing under this Will
> shall vest title in my personal representative in his fiduciary
> capacity and shall remain so vested until my personal
> representative distributes or sells that property, at which time title
> shall vest in the distributee or purchaser.

*Will of Marlin Stoner*, Article 6, Paragraph G, Docket Entry No. 42-5 at *4. Given this language, this Court finds that the decedent's intent was to vest title to the Property with his personal representative, as opposed to the devisees.

It is of no import that the Debtor, himself, is the decedent's personal representative; title rested with him solely in his capacity as a fiduciary solely for the purpose of managing the Property in accordance with the terms of the Will. Indeed, if the debts of the probate estate had

exceeded the assets, the devisees would not have received any distribution under the Will, let alone title to the Property.   Therefore, the title he held in his capacity as the personal representative was legal and not equitable.   Section 541(d) dictates that if a debtor holds only legal title, and not an equitable interest at the commencement of the bankruptcy case, then only the legal title, and not the equitable interest, becomes property of the estate. 11 U.S.C. §541(d). At the time of the bankruptcy filing, the Debtor, as executor under the Will, possessed only bare legal title to the Property and a contingent interest as a beneficiary under the Will.

Resolution to this dispute, however, requires more than simply identifying title to the Property at the time of the bankruptcy filing.   Section 522(d)(1) refers to an "interest" in property, not "title" to property.   Whether or not the Debtor has title to the Property is not determinative of the issues.   Rather, the Court must examine whether the Debtor's interest in this Property, as a contingent beneficiary, may be exempted as an "interest [] in real property [] that the Debtor uses [] as a residence…" 11 U.S.C. § 522(d)(1).

### C.  Interest Subject to Exemption

Section 522 of the Bankruptcy Code governs the exemptions available to a debtor. That section permits a debtor to elect certain federal exemptions provided for in subsection (d) of §522 or to elect exemptions provided by other applicable state and federal law, unless the state has opted out of the federal exemption scheme. 11 U.S.C. § 522(b)(1). Under subsection (d)(1) of the federal exemption scheme, commonly referred to as the homestead exemption, a debtor may exempt a portion of its interest in real or personal property that the debtor uses as a residence.  That subsection provides in relevant part:

(d) The following property may be exempted under subsection (b)(1) of this section:

> (1) The debtor's aggregate interest, not to exceed $21,625 in value,
> in real property or personal property that the debtor or a dependent
> of the debtor uses as a residence....

11 U.S.C. § 522(d)(1).  Having previously determined that the Debtor in this case did, in fact,

hold a contingent interest in the Property devised to him by his father at the time the Debtor filed

his Petition, the question remains whether the Debtor used the Property as a residence within the

meaning of 11 U.S.C. § 522(d)(1).

### 1.    Meaning of "residence" within 11 U.S.C. § 522(d)(1)

The term "residence" is undefined in the Bankruptcy Code.   The majority of courts

addressing the parameters of a "residence" for purposes of 11 U.S.C. § 522(d)(1) suggest that

"[w]hether real property constitutes a 'residence' is dependent upon the facts presented." *In re*

*Tomko*, 87 B.R. 372, 375 (Bankr. E.D.Pa. 1988); *Matter of Neis*, 723 F.2d 584, 588 (7th Cir.

1983)("[I]ssues of abandonment and creation of a homestead are fact-bound questions based

primarily on a determination of the owner's intent").   However, courts are divided as to the

meaning of "residence" and the interpretational method that should be employed in determining

whether a property constitutes a residence within the meaning of 11 U.S.C. § 522(d)(1).

### a.    Plain Meaning Approach

Current Supreme Court precedent has adopted the "plain meaning approach" as the

default rule of statutory interpretation. *See U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240-

41 (1989). ("[A]s long as the statutory scheme is coherent and consistent, there generally is no

need for a court to inquire beyond the plain language of the statute."); *Caminetti v. U.S.*, 242

U.S. 470, 485 (1917) ("It is elementary that the meaning of a statute must, in the first instance,

be sought in the language in which the act is framed, and if that is plain, and if the law is within

the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms.").

The first line of cases adopts a plain meaning approach to interpretation of the term "residence." *See In re Demeter*, 478 B.R. 281 (Bankr. E.D. Mich. 2012)("If the word "residence" in § 522(d)(1) is unambiguous, the Court must give that word its plain meaning, unless doing so would lead to an absurd result or would be demonstrably contrary to Congressional intent.") (*citing Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004)); *See In re Lawrence*, 469 B.R. 140, 142 (Bankr. D.Mass. 2012); *In re Gandy*, 327 B.R. 807 (Bankr. S.D.Tex. 2005). These cases apply the literal definition of the word "residence" which, according to Black's Law Dictionary, is "the place where one actually lives." BLACK'S LAW DICTIONARY 1423 (9th ed. 2009). Black's Law Dictionary further elaborates that a person may have "more than one residence at a time." *Id.* Likewise, according to Webster's Third New International Dictionary, the plain meaning of "residence" is "the act or fact of abiding or dwelling in a place for some time." *Webster's Third New International Dictionary* 1931 (3d ed., Merriam-Webster, Inc. 2000) (1961). Based upon these definitions, courts which use the plain meaning approach have applied a more broad interpretation of what constitutes a "residence" for purposes of 11 U.S.C. §522(d)(1).

In addition, cases adopting the plain meaning approach rely on the specific language of the statute to interpret Congress' intent. The *Lawrence* and *Demeter* courts note that Congress chose to use only the word "residence" in § 522(d)(1) and not "principal residence" or "primary residence" which are used in other sections of the Code. The *Lawrence* court concluded, and the *Demeter* court agreed, that Congress had been "deliberate in its terminology" and that Congress' intent in choosing this terminology was to provide a more expansive meaning to "residence." *In*

*re Lawrence*, 469 B.R. at 142.  Thus, these plain meaning line of cases provide debtors with greater freedom to choose the real estate that they wish to claim as exempt under 11 U.S.C. § 522(d)(1).[2]

### b.  "Residence" as "Homestead" Approach

The second line of cases equate a "residence" under § 522(d)(1) to what is a "homestead" under state law. *See In re Brown*, 299 B.R. 425 (Bankr. N.D.Tex., 2003); *See also In re Marsico*, 278 B.R. 1, 5 (Bankr. D.N.H., 2002)(*quoting In re Tomko*, 87 B.R. 372, 374 (Bankr. E.D.Pa., 1988); *In re Anderson,* 240 B.R. 254, 256 (Bankr. W.D.Tex., 1999).   Courts electing this approach reason that "[a] homestead, as a property interest, is defined by state law." *In re Anderson*, 240 B.R. at 256 (*citing Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (*quoting Butner v. U.S.,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)); *In re Universal Seismic Assocs*., 288 F.3d 205, 208 (5th Cir.2002)).   For this reason, these courts look to the law in the state where the property is located to determine the meaning of "homestead."

There is, by far, a more developed body of case law applying the settled state court's reading of the term "homestead" as a means to interpret "residence."   As the court in *Demeter* noted before ultimately rejecting this approach:

> Other cases which, like *Brown*, hold that the terms 'residence' under § 522(d)(1) and 'homestead' are interchangeable, and which look to state law to define 'homestead' to determine whether debtors can claim a 'residence' exemption under § 522(d)(1), include: *In re Rivera*, 470 B.R. 109, 117 (Bankr. D.P.R. 2012)(concluding that under the law of Puerto Rico, where the property claimed as exempt under § 522(d)(1) was located, a homestead must be a debtor's principal residence); *In re Kaplan*, 468 B.R. 246, (Bankr. W.D.Ky. 2012)(concluding that under Kentucky law, "a homestead is established by actual intention to

---

[2]   The majority of the cases applying the plain meaning definition to "residence" have fact patterns involving debtors who own and occupy multiple properties.

> live permanently in a place, coupled with an actual use and occupancy"); *In re Buick*, 237 B.R. 607 (W.D.Pa. 1999) (citations omitted)(stating, regarding the debtor's claim of exemption under § 522(d)(1), that "[b]ecause the Bankruptcy Code does not define 'homestead' either, it is appropriate, indeed it is necessary, for this Court to turn to relevant state law in order to fill in the gaps regarding a debtor's exemption of a homestead" and "[s]urveying the law of states [other than Pennsylvania where the property at issue was located] regarding homestead exemptions" because "Pennsylvania does not provide for a homestead exemption").

*In re Demeter*, 478 B.R. at 290.

### c.   This Court's Approach-"Homestead" defined by State Law

This Court finds that §522(d)(1) "should be interpreted in light of the goal of the exemption: to protect a debtor's family home." *In re Anderson*, 240 B.R. 254, 256 (Bankr. W.D.Tex. 1999); *See In re DeMasi*, 227 B.R. 586, 588 (D.R.I. 1998).  In undertaking statutory interpretations, this Court is not constrained by the words employed in the statute, severed from the purpose and implication of the legislation.  Rather, this Court chooses to afford consideration to the statute's context, in addition to language.  As noted by the Supreme Court:

> The definition of words in isolation, however, is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.

*Dolan v. U.S. Postal Service*, 546 U.S. 481, 486 (2006).  This Court finds it appropriate to follow the second line of cases: those that equate "residence" to "homestead" as defined by state law. Numerous courts, including those in nearby jurisdictions, are employing this approach. *See Owen v. Owen  500 U.S. 305, 305, 111 S.Ct. 1833, 1833 (1991)* ("The Bankruptcy Code allows States to define what property is exempt from the estate that will be distributed among the debtor's creditors."); *In re Buick*, 237 B.R. 607 (W.D.Pa. 1999); *In re Tomko*, 87 B.R. 372

(Bankr. E.D.Pa. 1988). In both *Buick* and *Tomko*, cases out of Pennsylvania, the courts looked toward the meaning of "homestead" under state law to determine if an exemption under § 522(d)(1) was appropriate[3].

More importantly, this Court respectfully disagrees with the courts in *Lawrence* and *Demeter* regarding the plain meaning of "residence." As an initial matter, this Court concludes that the meaning of "residence" requires an element of permanence. For example, Colliers notes that a residence is ordinarily a "fixed and permanent abode, as distinguished from a place of temporary occupation." 2 *Colliers on Bankruptcy* ¶ 109.02[2], at 109.13 (16th ed. 2010). Also, according to Webster's Third New International Dictionary, "reside" means "to dwell permanently or continuously[.]" *Webster's Third New International Dictionary* at 1931. Thus, by its very definition, the term "residence" incorporates some measure of permanence.

Additionally, this Court determines that there is ambiguity in the statutory language of §522(d)(1), specifically with respect to the term "residence." As noted above, the court in *Demeter* held the statutory language of § 522(d)(1) to be unambiguous and, as a result, the *Demeter* court applied what it determined to be the plain meaning without further inquiry. *Demeter*, 478 B.R. 281.[4] Indeed, if unambiguous, federal and state statutes should be interpreted

---

[3] The *Buick* and *Tomko* courts looked to laws of other states because Pennsylvania, like New Jersey, does not offer a homestead exemption.

[4] This Court notes that several other courts who employ the plain meaning approach have emphasized the appearance of the term "principal residence" or "primary residence" in other sections of the Bankruptcy Code as indicative of Congress's intent to broaden the scope of the exemption afforded by § 522(d)(1), which uses only the term "residence." This Court finds that argument unpersuasive in light of the fact that the terms "principal residence" and "primary residence" were added with amendments to the Code, subject to limited exception, subsequent to the creation of § 522(d)(1). *See* 11 U.S.C. §§ 101(13A); 101(18)(A); 101(18)(B)(ii); 101(19A)(A)(i); 101(19A)(B)(ii)(II); 101(27B)(A); 522(p)(2); 524(j)(1); 1123(b)(5); 1322(c)(1) and 1322(c)(2) (using the term "principal residence") and § 707(b)(2)(A)(iii)(II) (using the term "primary residence"). As such, the later addition of the qualifying terms "principal" and "primary" in other sections of the Code is not instructive as to how this Court should interpret the term "residence," absent a qualifier, in § 522(d)(1). Further, § 1322(b)(2), which was enacted at the same time as § 522(d)(1) and uses the term "principal residence," was drafted with a specific, limited purpose; namely to provide special protection to home-mortgage lenders. *Grubbs v. Houston First American Sav. Ass'n*, 730 F.2d 236 (1984). Thus, the use of the term "principal residence" in § 1322(b)(2) offers little guidance as to how this

according to their plain meaning. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *Lamie v. United States Trustee*, 540 U.S. 526; *In re Asher*, 2013 WL 268610 (Bankr. E.D.N.Y. 2013).  However, the court in *Asher* noted that,

> In determining its degree of ambiguity or clarity, courts are obliged not to examine statutory language in isolation. *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), *cited in Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 423 (2d Cir. 2005). Any court should consider the specific context in which that language appears and the statutory scheme's broader framework, striving to preserve the coherence and consistency of a statutory scheme. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (*citing Northern Pipeline Constrc. Co. v. Marathon Pipe Line Co*., 458 U.S. 50, 52–53, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)). If plain, the language is dispositive and conclusive. *Carcieri v. Salazar*, 555 U.S. 379, 388, 129 S.Ct. 1058, 172 L.Ed.2d 791 (2009). Ambiguity only exists so long as several plausible interpretations of the same statutory text, specific and different in substance, can be advanced. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 566–67, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005); *Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 108–09 (2d Cir. 2012).

*Asher*, 2013 WL 268610 at *4.

Further, the Third Circuit addressed the method to be used in interpreting statutes in *Marshak v. Treadwell*:

> The first step in interpreting a statute is to determine "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). *See also, e.g., Michael C. v. Radnor Township Sch. Dist.*, 202 F.3d 642, 648–49 (3d Cir.2000); *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 146 (3d Cir.1998) (en banc). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341, 117 S.Ct. 843. Where we find that the statutory language has a clear meaning, we need not look further. *Id.* at 340, 117 S.Ct. 843.

*Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir. 2001).  Thus, the meaning of "residence" must be interpreted in light of the broader context of the statute.  As evidenced by the competing

---

Court should interpret the term "residence" for purposes of the homestead exemption provided for in § 522(d)(1). Certainly, the unequivocal legislative history of § 522(d)(1) as discussed, *infra*, is far more instructive.

theories as to the proper application of the homestead exemption in the cases discussed earlier, several plausible interpretations of § 522(d)(1) have already been advanced. *Compare In re Lawrence*, 469 B.R. 140 (finding that a "residence" under § 522(d)(1) does not need to be primary or principal and a debtor can own more than one residence and exempt either one) *with In re Brown*, 299 B,R, at 427 (finding that the term "residence" has a plethora of meanings such that it should be interchangeable with the term "homestead" as defined by state law). Therefore, the meaning of "residence" in the context of § 522(d)(1) is not so straightforward and ambiguity in the statutory language exists. *Cf. Lamie*, 540 U.S. 526 (finding that the meaning of the statute at issue was straightforward so no further inquiry was necessary). It has been said that ambiguity simply means "more than one principled meaning is permissible." The Honorable Thomas F. Waldron & Neil M. Berman, *Principled Principles of Statutory Interpretation: A Judicial Perspective After Two Years of BACPA*, 81 AM. BANKR. L.J. 195, 229 (2007).

In light of this ambiguity, this Court should consult the legislative history for guidance. *RadLAX Gateway Hotel, LLC. v. Amalgamated Bank,* 132 S.Ct. 2065, 2073 182 L.Ed. 2d 967 (2012); *FCC v. NextWave Pers. Commc'ns Inc.*, 527 U.S. 293, 305 (2003); *Daniel v. Am. Bd. Of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005) (citing *United States v. Dauray*, 2015 F.3d 257, 262 (2d Cir. 2000)); *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492 (3d Cir. 1996); *Hudson United Bank v. Chase Manhattan Bank of Conn., N.A.,* 43 F.3d 843, 849 n. 14 (3d Cir.1994) ("As this is a matter of statutory construction, consideration of the legislative history would be appropriate."). The legislative history to § 522(d)(1) buttresses the Court's holding that § 522(d)(1) extends only to real estate which a debtor truly intends to use as his homestead. *Matter of Neis*, 723 F.2d 584. The Historical and Statutory notes to 11 U.S.C. § 522(d)(1) state, in relevant part:

> Subsection (d) specifies the Federal exemptions to which the debtor is entitled. They are derived in large part from the Uniform Exemptions Act, promulgated by the Commissioners of Uniform State Laws in August, 1976. Eleven categories of property are exempted. First is a ***homestead*** ... which may be claimed in real or personal property that the debtor or a dependent of the debtor uses as a residence.

11 U.S.C. § 522(d)(1) hist. n. (Revision Notes and Legislative Reports)(1978 Acts)(emphasis added). The Court takes notice of the appearance of the word "homestead" in the notes to §522(d)(1). This Court regards Congress' inclusion of the word "homestead" when providing a clarification of the residence exemption as reflective of Congress' intent that the residence exemption be reserved for real estate that a debtor truly uses as a "homestead."

Further, as noted above, the Federal exemptions are derived from the Uniform Exemptions Act[5] as drafted by the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association in 1977. Section 4(a) of the Uniform Exemptions Act, which is titled "Homestead Exemption," permits "[a]n individual [] to an exemption as a homestead of his interest in property in this State used as a home[.]" Uniform Exemptions Act §4(a). Given that this is the text from which the federal exemption in §522(d)(1) is derived, it logically follows that the term "residence" in §522(d)(1) can be interpreted interchangeably with the term "homestead."

In addition, several Congressional House Reports, issued prior to the enactment of the Bankruptcy Code in 1978, addressed the historical purpose of the exemption laws and the need for a modernized, federal version. *See Report of the Commission on the Bankruptcy Laws of the United States*, App. Pt. 1. H.R. Doc. No. 93-137, 93d Cong., 1st Sess. 170-73, 195-96(1973), *reprinted in* Vol. B *Collier on Bankruptcy*, App. Pt. 4(c) (Mathew Bender 15th Ed. Revised);

---

[5] The National Conference of Commissioners on Uniform State Laws changed the designation of the Exemptions Act from "Uniform" to "Model" as approved by the Executive Committee on July 16, 1996.

H.R. 8200, 95th Cong., 1st Sess. §522 (1977) (as reported by the House Committee on the Judiciary, September 8, 1977), *reprinted in* Vol. B *Collier on Bankruptcy*, App. Pt. 4(d) (Matthew Bender 15th Ed. Revised).   According to these reports, the historical purpose of exemption laws was to "protect a debtor from his creditors" and to "provide him with the basic necessities of life[.]" Vol. B *Collier on Bankruptcy*, App. Pt. 4(d) at 1220.   Specifically, the purpose of a homestead exemption is to provide debtors with the basic necessity of a home. *See In re Tomko*, 87 B.R. at 375.   However, prior to the 1978 Act, homestead exemptions were governed by state law, most of which were archaic and so grossly outdated that they did not adequately protect modern urban debtors. Vol. B *Collier on Bankruptcy*, App. Pt. 4(d) at 1219-20.   The Commission suggested that a new bill be implemented to provide exemptions which would fulfill the historical purpose as well as satisfy the federal interest of providing a fresh start to modern debtors. *Id.*   As a result, the Commission recommended that a "debtor be allowed as exempt property of the estate the types of property that have been allowed traditionally as exempt under state law," and specifically proposed that "[a]n individual debtor [] be allowed property which he owned and used at the date of the filing of the petition as a home[.]"  Vol. B *Collier on Bankruptcy*, App. Pt. 4(c) at 423, 424-25.

Thus, §522(d)(1) is rooted in state law and is based upon the underlying premise that a debtor be afforded an exemption in his home.   It is therefore consistent with the legislative history of §522(d)(1) that this Court likens the term "residence" in §522(d)(1) to a "home" or "homestead" and interprets the definition of the term "residence" within §522(d)(1) as requiring more than mere occasional or temporary occupancy.   It is likewise consistent with the legislative history of §522(d)(1) that this Court looks to state law interpretations of the term "homestead" to determine the meaning of "residence" within §522(d)(1).

Moreover, the Court finds that this method of interpreting a homestead exemption comports with the general rule in bankruptcy that property interests are to be determined under state law. *Butner v. United States*, 440 U.S. 48, 55 (1979) ("[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). In this case, there is no federal interest that is paramount to an application of the homestead exemption premised on state law.

For these reasons, the Court looks to substantive state law and examines the relationship between the Debtor and the Property and considers the Debtor's intent as determinative. The Court acknowledges that "exemption statutes are generally held to be subjects of liberal construction in order to accomplish their remedial purpose." *Bohl v. Bohl*, 234 Kan. 227, 230, (Kan., 1983). However, the homestead exemption is not absolute and must not be construed so liberally so as to permit an exemption on real estate which is not a "residence" within the meaning of 11 U.S.C. § 522(d)(1).

## 2. Analysis

In determining the scope of an exemption for a "homestead," this Court turns for assistance to the relevant law of states other than New Jersey, given that New Jersey does not provide for a homestead exemption. *See Tomko*, 87 B.R. at 373. While the Court cannot locate any case law which deals with the exact same set of circumstances as those presented in this case, there are a number of cases in which courts analyze analogous circumstances. For example, in *In re Mason*, the court determined that occasional occupancy is insufficient to confer homestead rights. *In re Mason*, 48 B.R. 382, 383 (Bankr. M.D.Ala. 1984). In *In re Kaplan*, Judge Stout determined that a debtor's limited occupancy of a residence combined with the lack

of intent to use the property as a permanent residence did not qualify the residence as a "homestead" under Kentucky law. *In re Kaplan*, 468 B.R. 246, (Bankr. W.D.Ky. 2012). Also, in *In re Anderson* the court ruled that a debtor's involuntary and compelled absence from the property did not defeat the homestead exemption because the record demonstrated the debtor's intent to return to the property and occupy it as her home. *In re Anderson*, 240 B.R. 254. In addition, the Court is guided by the opinions discussed earlier. *See In re Demeter*, 478 B.R. 281; *In re Lawrence*, 469 B.R. 140; *In re Gandy*, 327 B.R. 807 (Bankr. S.D.Tex. 2005); *In re Brown*, 299 B.R. 425; *In re Marsico*, 278 B.R. 1; *In re Tomko*, 87 B.R. 372.

This Court is also informed by New Jersey's treatment of "homestead" in other substantive areas of law. The New Jersey Appellate Division has analyzed the meaning of "homestead" in the tax context in *Rubin v. Glaser*, 166 N.J.Super. 258 (N.J.Super.A.D. Feb 01, 1979), *aff'd* 83 N.J. 299 (N.J. Jun 19, 1980). In *Rubin*, the court examined whether a couple, who used a home for a few weeks during the summer and for occasional weekends throughout the year, could claim a homestead rebate for the property. Facing a statutory interpretation issue akin to the matter facing this Court, the Appellate Division in *Rubin* observed that the term "homestead" was undefined in the amendment to the tax statute at issue. However, the *Rubin* court reasoned that the term "homestead,"

> …has achieved a recognized meaning in common, every-day language, and in the established law of other jurisdictions. A homestead, in popular parlance, describes the home or residence of a family; it signifies the dwelling house in which the family resides, with the usual and customary appurtenances, including outbuildings necessary or convenient for family use. 40 Am.Jur.2d, Homestead, s 1 at 115-116. Cases from other jurisdictions are in accord. *See Bank of Sun Prairie v. Hovig*, 218 F.Supp. 767 (W.D.Ark.1963) (to qualify for homestead exemption, the owner must be in actual occupancy of the dwelling); *Tide Water Oil Co. v. Ross*, 123 S.W.2d 479 (Tex.Civ.App.1938), *aff'd* 145 S.W.2d 1089 (Tex.Sup.Ct.1941) (homestead is a residence, and a person

> cannot have two places of residence both subject to the homestead exemption); *Mutual Bldg. & Inv. Co. v. Efros*, 152 Ohio St. 369, 89 N.E.2d 648 (S.Ct. 1949) (homestead requires actual occupancy, mere intention being insufficient).

*Rubin v. Glaser*, 166 N.J.Super. at 264.   The *Rubin* court recognized the import of the New Jersey Legislature's use of the term "homestead":

> We do not regard use of the term 'homestead' in the amendment as being without significance to eligibility for the rebate. Had the framers of this amendment intended all residential property to be eligible, they could easily have so provided without reaching for a term previously without significance to New Jersey law. By this term, they sought to communicate the popularly understood concept of an owner's principal residence.

*Rubin v. Glaser*, 166 N.J.Super. at 264.   Thus, New Jersey courts take a substantially narrow view of a "homestead," requiring the real estate to also serve as a principal residence.

Applying this analysis to the factual circumstances in this case, this Court concludes that the Property was not the debtor's residence within the meaning of 11 U.S.C. § 522(d)(1) at the time he filed the Petition.   The Debtor certifies that he had been living at the decedent's residence for over a year prior to his bankruptcy.   However, when the Debtor prepared his Petition in November of 2010, a mere three months prior to the Petition filing date, he listed a different address as his residence.   The Debtor then signed his Petition on January 7, 2011 and made no effort to change his listed address.   This suggests that, although the Debtor was staying with his father in order to care for him, the Debtor maintained a separate residence and did not have the intent to make the Property his principal residence.   Moreover, the very purpose for which he was staying at the decedent's residence suggests that the Debtor was residing there on a temporary basis; *i.e.* until his father became well or, sadly, passed away.

As discussed above, this Court reads the term "residence" in a manner requiring some measure of permanence.   This approach is consistent with the New Jersey state law's

interpretation of the term "homestead," equating it to a principal residence.  The record before the Court offers no support for any finding that the Debtor considered the decedent's residence as the Debtor's principal residence or that he intended his stay there to be permanent.  The Debtor has not submitted any change of mailing address forms, change in driver's license or indication as to where he was registered to vote at the time of his filing.  Further, the fact that the Debtor did not seek to amend his schedules until nearly two years after he filed his Petition lends further support to the Court's conclusion.

The Debtor held an interest in the Property on the date of his bankruptcy filing; but, his interest was the same as the interest shared by his siblings in accordance with the Will and does not entitle him to a homestead exemption in any proceeds from the sale of the Property.  Had this Property truly served as the Debtor's residence at the time he filed his Petition, his original Schedules would have reflected this fact.  Or, given the timing of his father's death and the Petition date, the Debtor could have sought to amend his schedules sooner.  He did not.  In this same vein, the Debtor does not offer any indicia of proof evidencing his treatment of the Property as his permanent residence.  Finally, the Court cannot ignore that, at some point prior to the filing of his Amended Schedules, consistent with the dictates of the Will, the Debtor sold the Property and distributed the proceeds.  Therefore, it appears that the Debtor had no intention to live on the Property after his father's death.

**IV.    CONCLUSION**

Based on the record before the Court, and in light of the applicable case law, this Court finds that the Property was not the Debtor's "homestead" or "residence" within the meaning of 11 U.S.C. § 522(d)(1) at the time the Debtor filed his Petition.  Therefore, he may not claim an exemption.  Accordingly, the Court grants the Trustee's Motion.  Counsel for the Trustee is directed to submit an appropriate Order.

Dated: March 6, 2013

Honorable Michael B. Kaplan
United States Bankruptcy Judge